[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE (No. 112)
The motion to strike now before the Court raises issues concerning both the certificate of good faith requirement set forth in Conn. Gen. Stat. § 52-190a(a) and the "extreme and outrageous" element of the tort of intentional infliction of emotional distress. For the reasons set forth below, the motion must be granted. CT Page 10112
The complaint addressed by the motion is a fifteen count pleading. It alleges that in August 1997, the plaintiff, Geoffrey Scott Johnson ("Geoffrey), was the fifteen-year-old son of the adult plaintiffs, Geoffrey Schiebel Johnson and Joanne Johnson (the "parents"). On August 16, 1997, Geoffrey revealed to his parents that he was suffering from severe depression and had thoughts of suicide. On August 19, 1997, the parents met with the defendant Julian Hartt, an employee of the codefendant, Atlantic Health Services, PC. A fee dispute developed, and the parents left Atlantic to seek treatment elsewhere. The parents subsequently complained about Atlantic's behavior to their insurance carrier. At some point (the complaint does not say when), Hartt contacted the Connecticut Department of Children and Families "and made a report of medical neglect against Mr. And Mrs. Johnson)." The complaint provides no details of this "report" other than terming it "false and/or [in] bad faith" and alleging that Hartt "did not keep Geoffrey Johnson's medical information confidential." DCF later determined that the report was a case of "false reporting" and that Hartt's complaint was made in "retaliation against father for making complaint against Atlantic Health to insurance company." The complaint specifically alleges that Hartt and Atlantic were health careproviders. It does not contain a certificate of good faith. See Conn. Gen. Stat. § 52-190a(a).
The first through sixth counts of the complaint allege negligence on the part of Hartt and Atlantic. The seventh through twelfth counts allege the tort of intentional infliction of emotional distress on the part of the two defendants. The thirteenth through fifteenth counts allege the tort of negligent infliction of emotional distress on the part of Hartt.
The action was commenced by service of process on August 18, 1999. The defendants filed the motion to strike now before the Court on March 16, 2000. The motion seeks to strike the entire complaint. It contends, inter alia, that the absence of a good faith certificate is fatal and that the conduct complained of does not reach the level of "extreme and outrageous" required by the tort of intentional infliction of emotional distress. The motion was argued on August 14, 2000.
It will be helpful to initially discuss the first through sixth counts together with the thirteenth through fifteenth counts. Each of these counts asserts a cause of action alleging negligence. Conn. Gen. Stat. § 52-190a(a) provides that:
No civil action shall be filed to recover damages resulting from personal injury . . . occurring on or after October 1, 1987, whether in tort or contract, in which it is alleged that such injury . . . resulted CT Page 10113 from the negligence of a health care provider, unless the attorney or party filing the action has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate, on a form prescribed by the rules of the superior court, of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant.
It is common ground between the parties that each of the defendants was a "health care provider" and that no certificate of good faith has been filed. Because each of the counts in question alleges that the plaintiffs have been injured by the negligence of a health care provider, this omission is fatal to those counts.
It is undoubtedly true that a certificate of good faith is not invariably required in all negligence actions filed against health care providers. "Our cases recognize that expert medical testimony is not required where there is such a gross want of care and skill as to afford an almost conclusive inference of negligence." Krause v. BridgeportHospital, 169 Conn. 1, 12, 362 A.2d 802 (1975). Thus, if a surgeon leaves a sponge inside his patient or amputates the wrong limb, his negligence would be so manifest that no good faith certificate would be required. Any layperson could confidently say that such an act would-necessarily be a negligent one.
The filing of a report of medical neglect is not an act of this description. Most health care providers are mandated reporters under Connecticut law; Conn. Gen. Stat. § 17a-101 (b); and have an affirmative duty to report cases of neglect when they have reasonable cause to suspect such neglect in their "professional capacity." Conn. Gen. Stat. § 17a-101a. The statutory reference to "professional capacity" makes the application of a lay standard inappropriate in such cases. The determination of whether the health care provider in question has failed to exercise due care in either filing or failing to file a report of medical neglect must necessarily be informed by expert opinion. The requirement of Conn. Gen. Stat. § 52-190a(a) that a negligence action against a health care provider be accompanied by a certificate of good faith sensibly applies to the case at hand.
The plaintiffs contended at oral argument that, in their view, a good faith certificate is unnecessary in this case because the report of CT Page 10114 medical neglect in this case was filed, again in their view, solely for purposes of harassment and retaliation. The short answer to this contention is that the filing of a report of medical neglect under such circumstances would not be negligent in the first place it would necessarily be an intentional act. "It is axiomatic, in the tort lexicon, that intentional conduct and negligent conduct, although differing only by a matter of degree are separate and mutually exclusive. . . . As Holmes observed, even a dog knows the difference between being tripped over and being kicked." American National FireInsurance Co. v. Schuss, 221 Conn. 768, 775-76, 607 A.2d 418 (1992). (Internal quotation marks and citations omitted.) Under the circumstances described by the plaintiffs, the counts in question fail to set forth causes of action in negligence in any event.
The above discussion is sufficient to dispose of the first through sixth counts and thirteenth through fifteenth counts, which are based in negligence. The seventh through twelfth counts, alleging the intentional infliction of emotional distress, must now be considered. Although the defendants argue otherwise, those counts plainly do not require a certificate of good faith because they do not set forth allegations of negligence. Conn. Gen. Stat. § 52-190a(a) facially applies only to allegations of negligence. Using a functional analysis, if a health care provider intentionally intends to inflict emotional distress it is difficult to see why either expert opinion or a certificate of good faith would be required. Just as in the case of a surgeon who leaves a sponge inside his patient or amputates the wrong limb, the deviation from professional standards in a case of intentional infliction of emotional distress would be so manifest that any layperson could determine it.
The question of whether the tort of intentional infliction of emotional distress has been adequately pled here is, however, more problematic. One of the necessary elements of the tort of intentional infliction of emotional distress is "that the conduct was extreme and outrageous."Appleton v. Board of Education, 254 Conn. 205, 210 (2000). (Internal quotation marks and citation omitted.) "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id. As Appleton
explains, the tort applies only in exceptional circumstances:
Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme and degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a CT Page 10115 civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Id. at 210-11. (Internal quotation marks and citations omitted.)
Are the allegations of intentional infliction of emotional distress here sufficient to meet this exacting standard? The question is a troubling one because it is possible that the underlying circumstances are indeed sufficient to pass the test. The problem is that we do not know exactly, or even roughly, what those underlying circumstances are. In terms of what Hartt actually did, we only know that he "made a report of medical neglect." The making of a report of medical neglect is not actionable in and of itself. The complaint plainly implies that something much more sinister was going on here, but the identity of that something is obscured by a cloud of confusion. We are not provided with even the slightest detail of what the "report of medical neglect" consisted. We are told on the one hand that the complaint was "false" but on the other hand that Hartt "did not keep Geoffrey Johnson's medical information confidential." To the extent that Hartt disclosed "Geoffrey Johnson's medical information, " his report may have been accurate. of course, the mandated reporter statute; Conn. Gen. Stat. § 17a-101a; requires a health care professional to disclose otherwise confidential medical information under certain circumstances. The complaint ultimately requires us to speculate about basic facts, such as what Hartt said and whether he was legally permitted — or indeed required — to say it.
The case law makes clear that the tort of intentional infliction of emotional distress applies only to exceptional cases. When that tort is applied to an utterance, it is essential to know what that utterance is. In the case at hand, we simply do not know what the utterance is. Under these circumstances, the motion to strike must be granted. The plaintiffs will, of course, be allowed to replead in the normal course and, if they do, it is hoped that they will do so with greater specificity.
The motion to strike is granted in its entirety.
Jon C. Blue, Judge of the Superior Court.